IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ALAN CLARK,

    Plaintiff,

v.                                                       Civil Action No. 3:12CV896

BAYDOCS, INC.

    Defendant.

## MEMORANDUM OPINION

Before the Court is Plaintiff Alan Clark's Motion for Leave to Amend. (ECF No. 9.) Defendant BayDocs, Inc. opposes amendment on the grounds of futility. (ECF No. 15.) Clark replied. (ECF No. 17.) Neither party requested oral argument. The Court dispenses with oral argument because the materials before the Court adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1332 and 636(c).

For the reasons that follow, the Court will deny Clark's Motion for Leave to Amend without prejudice and will grant Clark leave to file a different Amended Complaint.

Clark's Proposed First Amended Complaint contains the two breach of contract claims included in his original Complaint, as well as a third, tort claim for wrongful discharge from at-will employment.[1] (Mot. Amend Ex. A Proposed First Am. Compl. ("First Am. Compl.")) (ECF No. 9-1). Specifically, Clark claims:

    Count I      BayDocs breached its contractual obligation to Clark when it failed to pay Clark his contractually promised severance package upon Clark's termination. (First Am. Compl. ¶¶ 35-45.)

---

[1] Both the Complaint and Proposed First Amended Complaint rely upon the same factual allegations. The Court cites to the Proposed First Amended Complaint.

Count II     BayDocs breached its contractual obligation to Clark when it failed to pay Clark his contractually promised $10,000 2009 bonus. (*Id.* ¶¶ 46-50.)

Count III    BayDocs wrongfully terminated Clark for refusing to agree to a significant, third salary reduction, in violation of Virginia's public policy expressed in the Wage and Payment Act, Va. Code Ann. § 40.1-29 (West 2013). (*Id.* ¶¶ 51-55.)

With respect to Count III, the Proposed First Amended Complaint contains factual allegations that suggest BayDocs terminated Clark for: (a) "refusing to agree to a significant salary reduction" ("Salary Reduction Theory") (*Id.* ¶ 55); and, (b) demanding that BayDocs honor the contractually promised, but unpaid $10,000 2009 bonus and the contractually promised severance package ("Contractually Promised But Unpaid Compensation Theory") (*Id.* ¶¶ 28, 34). Clark, however, framed his *legal* claim in Count III solely as one for relief under the Salary Reduction Theory.

On this record, as explained below, and even presuming Clark's executive status, such a claim likely cannot survive scrutiny under a motion to dismiss. Thus, permitting amendment of Count III in its current form is futile. Nevertheless, the facts may support, and the law may not foreclose, a claim premised on the Contractually Promised But Unpaid Compensation Theory. Clark failed to plead the Contractually Promised But Unpaid Compensation Theory in Count III of the Proposed First Amended Complaint. Accordingly, leave to amend will be denied without prejudice as to the Proposed First Amended Complaint. The Court will grant Clark leave to amend to file a different Amended Complaint.

## I. Standard of Review

Federal Rule of Civil Procedure 15(a)(2) instructs courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme Court of the United States instructs courts to heed this mandate and freely allow amendments in the absence of

2

considerations such as undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) ("A district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile."). A district court may deny leave to amend when the proposed amended complaint fails to satisfy the requirements of the Federal Rules of Civil Procedure because the amendment would not survive a motion to dismiss, rendering any attempt to amend futile. *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).

In assessing a motion to amend, then, a court turns to the familiar standard in assessing a motion to dismiss. "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of

what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citation omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

## II. Factual and Procedural Background

### A. Summary of Allegations in the Proposed First Amended Complaint[2]

On September 17, 2008, Alan Clark signed a Letter Employment Agreement "detailing the terms of his pending employment with BayDocs as Executive Vice President and Chief Legal Counsel." (First Am. Compl. ¶ 6.) The Letter Employment Agreement set Clark's base salary of $225,000 and included a provision for quarterly bonuses up to $25,000. The Letter Employment Agreement categorized Clark's employment as "at-will," and explicitly stated that "[s]hould

---

[2] For purposes of this motion, the Court assumes the well-pleaded factual allegations in the Proposed First Amended Complaint to be true and views them in the light most favorable to Clark. *See Matkari*, 7 F.3d at 1134. The Court grants Clark leave to file an Amended Complaint to address the missing *legal* contentions in Count III, not because the *factual* content of the allegations fails to plausibly state a claim for relief.

BayDocs terminate your employment . . . you are entitled to a six month severance package." (*Id.* ¶ 8.)

Clark received a $10,000 bonus at the end of 2008, and in the spring of 2009, BayDocs increased his salary to $285,000. In December 2009, BayDocs's owner Megan Lawler informed Clark that he would receive a $10,000 bonus ("promised $10,000 2009 bonus").

In early 2010, and continuing through the first half of 2011, an industry-wide slow down and cash flow issues caused BayDocs to reduce Clark's salary to $225,000 and to postpone paying his promised $10,000 2009 bonus. In December 2010, when Clark, Lawler, and Kathleen Leonard, another BayDocs employee, discussed Clark's promised but unpaid $10,000 2009 bonus, Lawler and Leonard confirmed that BayDocs could not and would not pay the previously promised $10,000 2009 bonus.

On June 28, 2011, BayDocs asked Clark to sign a Second Letter Employment Agreement. The Second Letter Employment Agreement "removed Clark's duties as Executive Vice President (leaving him with the sole title of Chief Legal Officer), reduced the hours of his position to 32 hours a week, permitted Clark to also engage in the private practice of law, and reduced his salary to $155,000." (*Id.* ¶ 16.) The Second Letter Employment Agreement "specifically stated that Clark's 'Original Employment Agreement remain[ed] intact.'" (*Id.* ¶ 17.) Prior to signing the Second Letter Employment Agreement, Clark added language that his "original severance provisions" "remain[ed] intact." (*Id.* ¶ 18.) Clark initialed the change, signed the Second Letter Employment Agreement, and returned it to Lawler on August 23, 2011.

On August 23, 2011, Lawler emailed Clark that BayDocs could not afford the promised severance provision. Later on August 23, 2011 when Clark and Lawler spoke on the phone regarding the severance provision, Clark indicated he had not and would not waive his

5

entitlement to the promised severance. Following this conversation, Clark continued to work at BayDocs and BayDocs paid Clark $155,000, the salary level indicated in the Second Letter Employment Agreement.

On May 29, 2012, Lawler and Leonard called Clark to inform him that "changes were necessary and staff needed to be eliminated." (*Id.* ¶ 24.) Lawler and Leonard told Clark that staff eliminations would begin with him because "he was the highest paid staff member." (*Id.*) Lawler and Clark discussed Clark's severance package again, including their shared desire to reach a financially feasible accommodation. Lawler "expressed an acknowledgement that Clark was owed severance, but an [sic] uncertainty as to the specific amount BayDocs was willing to pay." (*Id.* ¶ 25.)

On June 4, 2012, Lawler sent Clark a letter ("the June 4 Letter") attempting to reduce Clark's salary, for the third time, to $116,250. Clark told Lawler he would not sign the June 4 Letter. On June 6, 2012, Lawler sent Clark another copy of the June 4 Letter and "implied that a failure to sign it would be 'deemed' by the company [sic] his having quit or resigned." (*Id.* ¶ 27.) On June 6, 2012, Clark informed Lawler that he was not resigning and did not accept the June 4 Letter's terms. Clark further communicated that if and when he was terminated, "he expected to be paid his contractual severance payment of $112,500" and the promised but unpaid $10,000 2009 bonus. (*Id* ¶ 28.)

On June 7, 2012, Lawler emailed Clark, "taking the position that [Clark's] refusal to sign the June 4, 2012 Letter meant that, despite [Clark's] unequivocal statements to the contrary, he was resigning." (*Id.* ¶ 29.) Lawler indicated that BayDocs would send Clark's final paycheck together with anything owed on previous paychecks. On June 7, 2012, Lawler terminated Clark's employment.

### B. Procedural History

On November 7, 2012, Clark filed his Complaint in the Circuit Court for Chesterfield County. (Not. Removal ¶ 2.) (ECF No. 1.) The Complaint alleged two counts of breach of contract for Clark's unpaid $10,000 2009 bonus and his unpaid severance. (*See* Not. Removal Ex. A Compl. ¶¶ 35-50.) (ECF No. 1-1.) On December 21, 2012, BayDocs filed its Notice of Removal. (ECF No. 1.) On January 4, 2013, BayDocs answered and raised certain affirmative defenses, including "that this action should be transferred to the United States District Court for the Northern District of California" pursuant to the doctrine of *forum nonconveniens*. (Answer 7.) (ECF No. 6.)

On January 10, 2013, Clark filed his Motion for Leave to Amend, seeking leave to add a tort claim of wrongful discharge in violation of Virginia's public policy pursuant to *Bowman v. State Bank of Keysville*, 331 S.E.2d 797 (Va. 1985). (ECF No. 9.) *See also* First Am. Compl. ¶ 55. Clark alleges that BayDocs "terminated [his] employment expressly due to his refusal to accept the salary reduction." (First Am. Compl. ¶ 54.) On January 24, 2013, BayDocs filed its Opposition to Clark's Motion for Leave to Amend Complaint on the grounds that the amendment would be futile because the new claim fails to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 15.) On January 30, 2013, Clark replied. (ECF No. 17.)

For the reasons stated below, the Court will deny Clark's Motion to Amend without prejudice. Nevertheless, the Court will grant Clark leave to file a different Amended Complaint.

### III. Analysis

Because Clark's claim for wrongful termination in violation of Virginia's public policy, as currently pled, would likely not survive Fed. R. Civ. P. 12(b)(6) scrutiny, the Court will deny

Clark's Motion to Amend. Clark claims that BayDocs terminated his employment in violation of the public policy expressed in section 40.1-29 of the Code of Virginia ("Section 40.1-29"), alleging the Salary Reduction Theory. The body of the Proposed First Amended Complaint includes factual allegations that Clark sought his earlier, contractually promised but unpaid $10,000 2009 bonus and severance payments. Clark, however, failed to plead the Contractually Promised But Unpaid Compensation Theory in Count III. Clark limited Count III to the Salary Reduction Theory: the claim that "BayDocs terminated Clark's employment expressly due to his refusal to accept the salary reduction" and that BayDocs terminated Clark's employment "for refusing to agree to a significant salary reduction." (First. Am. Compl. ¶¶ 54, 55.) On this record, the Court declines to find that Clark's wrongful termination claim predicated solely on the Salary Reduction Theory survives motion to dismiss scrutiny.

### A. Applicable Law: Wrongful Termination in Violation of Virginia's Public Policy

"Virginia is an at-will employment jurisdiction, meaning that an employee may be terminated at any time." *Lester v. TMG, Inc.*, --- F. Supp. 2d ---, No. 2:12cv421, 2012 WL 4052373, at *4 (E.D. Va. Sep. 13, 2012) (citing *Dray v. New Mkt. Poultry Prods.*, 518 S.E.2d 312, 313 (Va. 1999)). However, Virginia courts recognize a narrow exception creating a common law cause of action in tort such as "a wrongful discharge claim if the 'termination violates Virginia's public policy,' which is known as the '*Bowman* exception.'" *Id.* (quoting *Wells v. G.R. Assocs., Inc.*, No. Civ. A. 00-1408-A, 2000 WL 33199263, at *2 (E.D. Va. Nov. 22, 2000)).

"[A] plaintiff attempting to assert a 'Bowman claim' must identify a Virginia statute that the employer-defendant violated by terminating the plaintiff."[3] *Williams v. Va., State Bd. of Elections*, No. 3:11cv863-HEH, 2012 WL 2878579, at *8 (E.D. Va. July 13, 2012) (citing *Storey v. Patient First Corp.*, 207 F. Supp. 2d 431, 450 (E.D. Va. 2002). "Relying on Virginia's Wage and Payment Act, Va. Code Ann. § 40.1-29, courts in Virginia have held that 'an individual's right to compensation implicates a property right that falls within the *Bowman* exception.'" *Lester*, 2012 WL 4052373, at *4 (quoting *Altimari v. Beverage Mktg. USA, Inc.*, No. 2:08cv486, 2008 U.S. Dist. LEXIS 109984, at *23-26 (E.D. Va. Nov. 21, 2008)).

### B. Clark's Wrongful Termination Claim, as Pled, Even Presuming an Executive Status, Likely Does Not Survive Review for a Motion to Dismiss, Meaning Amendment as Pled Would be Futile

Briefing at this stage fails to create a record allowing this Court to determine the exact parameters of how the statutory provisions in the Wage and Payment Act apply to executive personnel, and to Clark specifically. Briefing also fails to create a record regarding whether Clark's claim for wrongful termination based on his refusal to accept a salary reduction, as pled, plausibly alleges a *Bowman* claim for wrongful termination in violation of public policy expressed in Section 40.1-29 in light of the limiting and potentially applicable statutory language contained in Section 40.1-29(D).[4]

---

[3] In *Bowman*, the Supreme Court of Virginia recognized a cause of action for improper discharge when two bookkeepers alleged that a bank board terminated their employment in retaliation for exercising their stockholder rights when voicing opposition to a board-supported merger. *Bowman v. State Bank of Keysville*, 331 S.E.2d 797, 800-01 (Va. 1985). The Supreme Court of Virginia held that the interference with shareholder rights violated public policy expressed in section § 13.1-32 of the Code of Virginia, which allows shareholders to vote free of duress or intimidation by corporate management. *Id.* at 801.

[4] "No employer shall require any employee, except executive personnel, to sign any contract or agreement which provides for the forfeiture of the employee's wages for time worked

The Court will grant Clark an opportunity to allege a *Bowman* claim based on the Contractually Promised But Unpaid Compensation Theory.

### 1. At this Stage, the Court Must Reject BayDocs' Contention that Count III Necessarily Fails as a Result of Clark's Executive Employee Status

#### a. The Parties' Positions as to How or Whether the Wage and Payment Act Governs Executive Personnel

BayDocs argues that Clark's claim for wrongful termination necessarily fails because "no court has recognized a Bowman claim involving executive personnel," whom, BayDocs contends, Section 40.1-29 specifically exempts from protection. (Def.'s Opp'n Pl.'s Mot. Leave Amend Compl. ("Def.'s Opp'n") 5 (citations omitted).) Without explaining why or citing specific language from the statute, BayDocs asserts that the "only provision that applies to executive personnel is § 40.1-29(C),[5] which governs unauthorized deductions from an employee's paycheck." (*Id.* at 6.) Clark counters that only two of eight subsections in the statute mention executive personnel, and that the failure to mention executive personnel in the other sections does not mean the other provisions fail to cover executives, nor does it necessarily telegraph a lack of public policy protecting executive personnel altogether.

---

as a condition of employment or the continuance therein, except as otherwise provided by law." Va. Code Ann. § 40.1-29(D) (West 2013).

[5] Subsection (C) states:

No employer shall withhold any part of the wages or salaries of any employee except for payroll, wage or withholding taxes or in accordance with law, without the written and signed authorization of the employee. An employer, upon request of his employee, shall furnish the latter a written statement of the gross wages earned by the employee during any pay period and the amount and purpose of any deductions therefrom.

Va. Code Ann. § 40.1-29(C) (West 2013).

10

In short, BayDocs asserts that Clark's executive status precludes any *Bowman* claim premised on the violation of the Wage and Payment Act, Section 40.1-29. Statutory analysis and governing case law render BayDocs's broad conclusion untenable.

### b. Statutory Analysis

"Executive" appears in two of the eight lettered subsections within Section 40.1-29. In Subsection (A)(1), the statute exempts executives from the requirement for regular pay periods and pay rates: "All employers operating a business shall establish regular pay periods and rates of pay for employees except executive personnel." Va. Code Ann. § 40.1-29(A)(1) (West 2013).[6]

In Section 40.1-29(D), the statute exempts executives from the earned wage forfeiture provision: "No employer shall require any employee, except executive personnel, to sign any contract or agreement which provides for the forfeiture of the employee's wages for time worked as a condition of employment or the continuance therein, except as otherwise provided by law." *Id.* § 40.1-29(D). By its own language, Section 40.1-29(D) suggests that employers may require executive personnel to sign a contract or agreement that provides for the forfeiture of the executive employee's wages *for time worked* as a condition of employment or *continued employment*. *Id.* (emphasis added). Despite this statutory language, neither party addressed in briefing how Section 40.1-29(D) impacts Clark's wrongful termination claim, pled as his Salary Reduction Theory, in light of his executive status.

---

[6] Subsection (A)(1) does not appear to pertain to the allegations at bar. Instead, Subsection (A)(1) seems to address a requirement for regular pay periods and pay rates for non-executive employees.

11

However, on this record, the Court cannot find, as BayDocs urges, that the limited references to executive employees in Virginia's Wage and Payment Act signal that Section 40.1-29 applies only to non-executive employees. Rather, the statute specifies that certain limited requirements apply to executive employees that do not apply to non-executive employees. At this stage of briefing, the Court cannot find that these limited distinctions in the statute necessarily eviscerate an executive employee's general right to compensation given other courts' broad recognition that "'an individual's right to compensation implicates a property right that falls within the *Bowman* exception.'" *Lester*, 2012 WL 4052373, at *4 (quoting *Altimari*, 2008 U.S. Dist. LEXIS 109984, at *23-26).

c. <u>Governing Case Law</u>

BayDoc's contention that governing case law bars amendment in this case also cannot be sustained. While BayDocs correctly suggests that the majority of cases analyzing *Bowman* claims do not involve plaintiffs at the highest managerial level, none of the cases cited turn on the executive or non-executive status of the employee.[7] Instead, existing precedent broadly recognizes the public policy undergirding the Wage and Payment Act, including that "section 40.1 is aimed at protecting the rights of employees." *Wells*, 2000 WL 33199263, at *7. These decisions do not make well-defined distinctions between the rights of executive and non-executive employees to receive compensation because they did not have that issue before them.

Thus, the Court must reject BayDocs's broad contention that Clark's proposed claim, based on the Salary Reduction Theory, necessarily fails as a result of his executive employee

---

[7] In briefing, BayDocs suggests that "this Court would be establishing new law by recognizing ... a cause of action [involving executive personnel] here." (Def.'s Opp'n 6). BayDocs overstates the impact of this Court finding that Clark has plausibly stated a claim at this juncture.

status. Nevertheless, as explained below, the specific language of Section 40.1-29(D) significantly diminishes the viability of Clark's wrongful termination claim based on the Salary Reduction Theory.

### 2. At this Stage, Clark's Claim in Count III Based the Salary Reduction Theory Likely Proposes a Futile Amendment

Within Count III of the Proposed First Amended Complaint, Clark states that he bases his wrongful termination claim on "BayDocs attempt[ ] to reduce [his] salary" and Clark's "refusal to accept the salary reduction," (First Am. Compl. ¶ 52, 54), but he also raises, in Counts I and II as breach of contract causes of action, the failure to pay his earlier, contractually promised but unpaid $10,000 2009 bonus and severance package. At this early stage of pleading the Court finds that, while Clark's allegations in Count III limiting his wrongful termination claim to the Salary Reduction Theory likely fail to plausibly state a claim for relief, his factual allegations regarding the earlier, contractually promised but unpaid $10,000 2009 bonus and severance package, when considered as a whole and in the light most favorable to him, could plausibly state a claim for wrongful termination, meaning that amendment to include the Contractually Promised But Unpaid Compensation Theory pursuant to Fed. R. Civ. P. 15(a)(2) would not be futile.

Clark's Salary Reduction Theory likely fails to plausibly state a claim for relief pursuant to the *Bowman* doctrine because Section 40.1-29(D), which Clark claims undergirds public policy, enables an employer to require executive personnel "to sign [a] contract or agreement which provides for the forfeiture of the [executive] employee's wages *for time worked* as a condition of employment or the *continuance* therein." *Id.* § 40.1-29(D) (emphasis added). The allegations contained in Clark's Proposed First Amended Complaint, when viewed in the light

13

most favorable to Clark, suggest that BayDocs used the June 4 Letter to reduce Clark's salary to $116,250 as a condition of his continued employment at BayDocs.

The operative concern in interpreting the statute would be the impact of the phrases "time worked" and "continued employment." Clark alleges that Lawler "implied that a failure to sign [the June 4 Letter] would be 'deemed' by the company [as] his having quit or resigned." (First Am. Compl. ¶ 27.) As alleged by Clark, the June 4 Letter might qualify as "a contract or agreement" that "provides for the forfeiture of [Clark's] wages for time worked" as a condition of his continued employment with BayDocs. *See* Va. Code Ann. § 40.1-29(D) (West 2013). The Salary Reduction Theory, pled by Clark in Count III, may run afoul of Section 40.1-29(D) of the Wage and Payment Act and suggest futility of amendment.

As noted above, however, neither party addressed the specific impact of Section 40.1-29(D) on Count III. Clark, perhaps acknowledging the impact of this provision on his case, suggests that "[t]he Virginia Supreme Court made it abundantly clear in *Bradick* [*v. Grumman Data Sys. Corp.*, 486 S.E.2d 545 (Va. 1997)] that a *Bowman* claim does not fail simply because the individual asserting it would have no statutory claim under the language of the underlying statute."[8] (Pl.'s Reply to Def.'s Opp'n ("Pl.'s Reply") 3.)

---

[8] In *Bradick*, the Supreme Court of Virginia, in answering a certified question from the United States Court of Appeals for the Fourth Circuit, held that:

> based on the public policy expressed in the [Virginians with Disabilities Act, Va. Code § 51.5-1 to 51.5-52 ("VDA")] and [Virginia Human Rights Act, Va. Code § 2.1-715] at the time of Grumman Data's alleged act of discrimination, the common law of Virginia provides a wrongful discharge remedy to an employee, such as Bradick, of an employer covered by the federal Rehabilitation Act of 1973 where the employee is discharged on account of his disability or the employer's perception of his disability.

*Id.* at 547.

14

Essentially, Clark would have this Court interpret *Bradick* to stand for the proposition that employees may use as the basis for their *Bowman* claims statutes whose application to the facts would not provide them with statutory relief. Clark fails to direct the Court to decisions interpreting *Bradick* in this way.[9] The Court will not make such a finding at this stage of pleading and in light of the lack of briefing from both parties on this issue.

### C. Because a Wrongful Termination Claim Can Stem from Contractual Promises for Future Bonuses Later Unpaid, Clark's Factual Allegations in the Rest of His First Amended Complaint May Support a Viable Claim, Meaning They Do Not Propose a Futile Amendment

While Clark's claim in Count III, as pled pursuant to the Salary Reduction Theory, even assuming Clark's executive status, may fail to state a claim for relief, the factual allegations contained in the body of the Proposed First Amended Complaint may plausibly allege a *Bowman* claim based on the Contractually Promised But Unpaid Compensation Theory. Courts in this district already have ruled that claims based on contractual promises of future bonuses or compensation, later unpaid, can survive a motion to dismiss under the *Bowman* doctrine.

In *Lester*, the United States District Court for the Eastern District of Virginia, Norfolk Division denied a motion to dismiss when an employer acted unilaterally to discontinue a promised salary, bonus, and commission plan and discharged the employee hired to develop business after he complained about the purported failure to pay pursuant to the compensation

---

[9] Indeed, *Bradick's* viability remains a question given the subsequent so-called *Lockhart* amendments to the Virginia Human Rights Act, Va. Code Ann. § 2.1-725 (West 1995) (repealed by Acts 2001, c. 844) and subsequent decision interpreting their limiting effect on *Bowman* claims predicated on discrimination. *See Doss v. Jamco, Inc.*, 492 S.E.2d 441 (Va. 1997). While granting summary judgment to an employer in a sexual harassment-based *Bowman* claim, a court in this district already has noted that "[*Bradick's*] precedential value is uncertain." *McCarthy v. Texas Instruments, Inc.*, 999 F. Supp. 823, 831 (E.D. Va. 1998). While the amendments to the discrimination laws discussed in *Bradick* and *McCarthy* do not impact the right to compensation undergirding a potential claim here, the *McCarthy* court's guidance in interpreting *Bradick* remains pertinent.

15

agreement. *Lester*, 2012 WL 4052373, at *1. The *Lester* court found that "a plaintiff's termination for complaining about unpaid wages may be cognizable under the *Bowman* exception." *Id.* at *5 (citing *Altimari*, 2008 U.S. Dist. LEXIS 109984, at *23-26).

Similarly, in *Altimari*, a claim for wrongful termination in violation of Virginia's public policy, the United States District Court for the Eastern District of Virginia, Norfolk Division denied a motion to dismiss in which the employee requested the employer to pay a promised performance-based bonus and the employer discharged the employee based on the request, claiming the applicable employment contract stated that the compensation included a bonus. *Altimari*, 2008 U.S. Dist. LEXIS 109984, at *24-26. In denying the motion to dismiss, the Court found that Altimari had "not claimed that he was not paid his salary, but instead that he was not given his bonus, that [the employer's] termination of his employment was 'based solely on [his] request that he be paid the promised bonus compensation.'" *Id.* at *25 (second alteration in original). The court found that the "grounds for termination Plaintiff alleges offend the public policy to protect employee's property rights in earned compensation, thus falling within the *Bowman* exception and giving Plaintiff a cause of action." *Id.* at *26.[10]

---

[10] In contrast, in *Coley v. Historic Hotels, Inc.*, 60 Va. Cir. 466, 466 (Va. Cir. Ct. Feb. 17, 2000), the Circuit Court of the City of Richmond sustained a demurrer to a wrongful termination claim where the plaintiff, upon returning to employment after leaving, sought to revoke a wage deduction authorization he previously signed as "part of the 'terms and conditions of [his] reinstatement to work . . . .'" *Id.* The court found that the plaintiff agreed to repay monies as a condition of his reinstatement and that the employer sought to have plaintiff abide by that agreement. *Id.* at 467. The court concluded that "[t]hese facts do not establish that the employer required plaintiff to give up wages as a condition of *continued* employment. Rather, they suggest the parties agreed to the withholding arrangement as part of plaintiff *beginning employment anew.*" *Id.* (emphasis added).

Unlike *Coley*, Clark did not agree to any salary reduction as a condition for reinstatement. The Proposed First Amended Complaint alleges that Clark never left his employment with BayDocs prior to his June 7, 2012 termination and expressly opposed the third salary reduction, as well as BayDocs's failure to pay Clark's contractually promised, future bonus, yet unpaid, and his contractually promised but unpaid severance package. (*See* First Am. Compl. ¶¶ 22, 28.)

### D. Leave to Amend to File an Different Amended Complaint

Here, the gravamen of Clark's Proposed First Amended Complaint, when viewing his allegations favorably, like that in *Lester* and *Altimari*, surrounds discharge for the employee's challenge to the terms of a discontinued, but previously agreed upon, contractual compensation agreement. Although Clark did not plead his *Bowman* claim in this manner, instead pursuing the Salary Reduction Theory, the factual allegations in the body of the Proposed First Amended Complaint plausibly support a claim for relief pursuant to the Contractually Promised But Unpaid Compensation Theory.

Although the Court denies Clark's Motion for Leave to Amend, the interests of justice and the requirement that amendments be granted freely dictate that Clark have another opportunity to amend his Complaint. Presently, Clark's allegations in Count III, regarding the salary reduction, seem to leave out his allegations, contained elsewhere in the Proposed First Amended Complaint, regarding the contractually promised future bonus that went unpaid and the contractually promised severance package that went unpaid. Given the status of the record, amendments shall occur on an accelerated basis.

Therefore, the Court grants Clark leave to amend.

### IV. Conclusion

For the foregoing reasons, the Court will deny Plaintiff's Motion for Leave to Amend, (ECF No. 9), and will grant Plaintiff leave to file an Amended Complaint.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 3-29-13